UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SHAWN PAUL BURKE,

Plaintiff,

-against-

JOSE LUIS VILLA, ARTHUR SORENSON,
SADRAC LOUIS, BONEFISH GRILL,
BONEFISH GRILL LLC, BLOOMIN' BRANDS,
INC. and JOHN DOES 1-100,

Defendants.

**MEMORANDUM & ORDER**
**19-CV-2957 (NGG) (RER)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Shawn Burke filed this action against Bonefish Grill, Bonefish Grill LLC, and Bloomin' Brands, Inc. (the "Corporate Defendants"), as well as Jose Villa, Sadrac Louis, Arthur Sorenson, and other unknown defendants (collectively, "Defendants"). (*See* Am. Compl. (Dkt. 10).) Before the court is Defendants' motion for summary judgment. (*See* Defs.' Mot. for Summ. J. ("Mot.") (Dkt. 40-1); Defs.' Reply in Supp. of Mot. for Summ. J. ("Reply") (Dkt. 40-23).)

Burke concedes summary judgment with respect to his claims for *quid pro quo* harassment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*; violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*; and aiding and abetting under the NYSHRL. (*See* Pl.'s Opp. to Mot. for Summ. J. ("Opp.") (Dkt. 40-19) at 18.) Burke also abandons his sex discrimination claims under Title VII and the NYSHRL and any claims for individual liability under the NYSHRL. *See Jackson v. Fed. Exp.*, 766 F.3d 189, 196 (2d Cir.

1

2014)[1] ("Where abandonment by a counseled party is not explicit but such an inference may be fairly drawn from the papers and circumstances viewed as a whole, district courts may conclude that abandonment was intended."). Because Burke fails to develop, or even address, the sex discrimination and individual liability allegation in response to Defendants' motion for summary judgment on those claims, an inference that he has abandoned these claims is proper here.[2] *See id.* at 195-96. Summary judgment is therefore granted as to those abandoned claims. *See id.*

This leaves Defendants' motion for summary judgment on Burke's allegations of hostile work environment and retaliation in violation of Title VII and the NYSHRL against the Corporate Defendants; of assault and battery against Jose Villa; and on the application of the after-acquired evidence doctrine to limit Burke's potential claim for damages. For the reasons set forth below, summary judgment is DENIED as to the hostile work environment claims, the assault and battery claims, and the application of the after-acquired evidence doctrine. Summary judgment is GRANTED as to all other claims.

---

[1] When quoting cases, and unless otherwise noted, all citations and quotation marks are omitted, and all alterations are adopted.

[2] Burke does ask the court to deny Defendants' motion for summary judgment on the sex discrimination claims. (*See* Opp. at 17.) But Burke conflates a sex discrimination claim with the "because of sex" element required to make a hostile work environment claim. In any event, Burke produces no evidence whatsoever to suggest that he was terminated because of his sex, as required by the applicable burden-shifting framework. *See Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 567 (2d Cir. 2000).

## I.   BACKGROUND[3]

Bonefish Grill is a casual dining seafood restaurant chain.[4] (Defs.' R. 56.1 Stmt. ("Defs.' 56.1") (Dkt. 40-18) ¶ 1.) Each Bonefish Grill runs under a common organizational system. (*Id.* ¶¶ 2-3.) The Bonefish Grill in Rockville Centre is no exception. (*Id.* ¶¶ 6-9.)

The Rockville Centre Bonefish Grill ("Bonefish") opened in 2014. (*Id.* ¶ 5.) Joseph Cruz was that location's Joint Venture Partner, a regional manager overseeing several Bonefish Grill locations. (*Id.* ¶¶ 2, 8.) Arthur Sorenson served as Managing Partner, charged with the day-to-day operations of the restaurant. (*Id.* ¶¶ 2, 7.) Sadrac Louis served as Culinary Manager, assisting Sorenson and supervising the kitchen staff. (*Id.* ¶¶ 3, 7.) He was responsible for "manag[ing] the staff" and "handl[ing] employee situations." (Dep. of Arthur Sorenson ("Sorenson Dep.") (Dkt. 40-4) at 92.) And Jose Villa served as Assistant Culinary Manager, assisting Louis in managing the kitchen staff. (*Id.* at 102-104.) Villa worked in the "back of the house," in the kitchen, with the line cooks. (Defs.' 56.1 ¶¶ 10-11; Sorensen Dep. at 155.) He and Louis managed the kitchen employees' scheduling. (Sorenson Dep. at 76-77, 107.)

---

[3] The court constructs the following statement of facts from the parties' Local Rule 56.1 Statements and the admissible evidence that they submitted. Because the parties dispute much of the relevant facts and circumstances, the court relies primarily on the deposition testimony from Burke, Sorenson, Louis, and Villa, among others.

[4] Bloomin' Brands, Inc. is the parent company of Bonefish Grill, LLC, which is the operating entity of Bonefish Grill. (Defs.' 56.1 ¶ 1.)

### A. Bonefish's Employment Policies and Procedures

#### 1. Employee Complaints

Bonefish adheres to a non-discrimination and non-harassment employment policy that provides three paths to report discrimination or harassment: an employee's immediate supervisor (provided your supervisor is not your harasser); the Joint Venture Partner; or an employee relations hotline. (Bloomin' Brands Non-Discrimination and Non-Harassment Policy (Dkt. 40-15) at 2.) Under this policy, Bonefish pledges to "swiftly and thoroughly investigate any complaints" and, upon finding a violation, "take remedial action that is effective and appropriate to the circumstances." (*Id.*)

Within this structure, Bonefish implemented processes and best practices to manage employee complaints. (Defs.' 56.1 Reply to Pl.'s R. 56.1 Resp. ("Defs.' 56.1 Reply") (Dkt. 40-24) ¶¶ 48-50.) Sadrac Louis testified that if an employee came to him with a complaint, he would document that report with the aggrieved employee, then elevate the complaint to the Managing Partner, Arthur Sorenson. (*Id.* ¶¶ 49-50; Dep. of Sadrac Louis ("Louis Dep.") (Dkt. 40-10) at 14-18; *see* Sorenson Dep. at 42-43.) When a complaint reached Sorenson, or came to him directly, he testified that he would also take a written statement from the employee and elevate the complaint to his supervisor, Joseph Cruz. (Sorenson Dep. at 18, 43-44.)

Sorenson handled the investigations into employee complaints, which involved interviewing the aggrieved employee, staff members, and any other witnesses. (*Id.* at 43-48.) Sorenson also investigated customer complaints. (*Id.* at 129.) After an investigation concluded, and Sorenson made a determination as to the complaint's credibility and necessary remedial action, he testified that he would maintain a record of the employee's statement as well as his interview notes. (*Id.* at 46-49.)

### 2.   Termination Policy

As a chain, Bonefish Grill does not maintain a formal termination policy. (Dep. of Jaci Jolly (Dkt. 40-5) at 24-25.) That policy is determined by each location and its managing partner. (*Id.*) Louis described Bonefish's general termination policy as a progression from verbal warning, to written warning, to termination. (Louis Dep. at 24.) Sorenson explained, however, that Bonefish did not mandate a progressive discipline process, and whether an employee received a series of warnings and notices depended on the circumstances. (Sorenson Dep. at 81.) Some instances, like a no call, no show absence, may justify immediate termination. (*Id.* at 81-82.)

At the Rockville Bonefish, Joseph Cruz maintained employment authority to hire and fire management-level employees; Sorenson maintained the same over non-managerial employees. (Defs.' 56.1 ¶ 2; Sorenson Dep. at 18, 80-81.) Neither Louis nor Villa could hire or fire employees. (Sorenson Dep. at 93.) But Louis could practice progressive discipline, which includes verbal or written warnings. (*Id.*)

### B.   Burke's Employment at Bonefish

Bonefish hired Shawn Burke in March 2014. (Defs.' 56.1 ¶ 5.) Burke developed a reputation as a capable employee, working several kitchen positions during his tenure. (Sorenson Dep. at 119; Dep. of Jose Villa ("Villa Dep.") (Dkt. 40-6) at 50; Dep. of Donell Ray ("Ray Dep.") (Dkt. 40-14) at 19.) He eventually came to operate the grill station, where he worked alongside Villa. (Defs.' 56.1 Reply ¶ 42; Villa Dep. at 50.) That's where this case begins.

### 1.   Burke's Allegations against Villa

Burke alleges that Villa touched him and made unwelcome sexual advances toward him over a two-year period. (Dep. of Shawn Burke ("Burke Dep.") (Dkt. 40-3) at 73-75.) He alleges that Villa

touched and squeezed his buttocks "whenever an opportunity presented itself for [Villa]," rubbed his back, shoulders, and arms, and put his hands around Burke's waist "like a couple," until Burke "shook him off." (*Id.* at 75-77, 87-89.) Burke also alleges that Villa would ask when Burke "was going to let him take [Burke] home from the bar, or . . . to his house" for "some fun." (*Id.* at 75, 77.) Burke came to believe that Villa had a sexual interest in him. (*Id.* at 185-86.)

Burke claims that he objected to Villa's overtures and often told him to stop touching him. (*Id.* at 75, 89.) Villa would stop for some period before eventually resuming his conduct. (*Id.*) Burke expressed a general fear of retaliation from reporting Villa, because of his power over Burke's employment schedule. (*Id.* at 99.)

Justine Rivera, a Bonefish employee who worked in the front of the house (*i.e.*, not in the kitchen) testified that she once saw Villa pinch Burke's buttocks, and another occasion, watched Villa whip Burke with a towel. (Dep. of Justine Rivera (Dkt. 40-13) at 31-32, 35-36.) Donell Ray, who was also a line cook, testified that Villa slapped his buttocks as well, but that he experienced it as a joke. (Ray Dep. at 19-21.) He also testified that Villa did not go as far with him as he did with others. (*Id.* at 21.) Ray recalled hearing Burke complain directly to Villa and about Villa to others. (*Id.* at 28, 51-52.)

Villa, who is married to a woman and has children, denies touching Burke or anyone else inappropriately; he also denies making any sexual advances toward Burke or anyone else. (Defs.' 56.1 ¶ 9; Villa Dep. at 53-54.) He testified that he is not sexually interested in men. (Villa Dep. at 53.)

2.   Burke's Complaints and Management's Response

*a.   The "Customer" Complaint*

On January 20, 2018, Burke, posing as a Bonefish diner, submitted a customer complaint, describing his experience at the restaurant. (Jan. 20, 2018 Customer Complaint (Dkt. 40-16).) He reported overhearing "a kitchen employee telling . . . Jose to stop touching him," and explaining how "Jose [was] touching his ass, his hips, and his back." (*Id.*) From the complainant's perspective, this "employee was serious and definitely not happy with this harassment." (*Id.*) Nor did it appear to be "the first time this has happened." (*Id.*)

Sorenson received this complaint by e-mail. (Sorenson Dep. at 121-22.) He testified that he discussed the complaint with Villa, but Sorenson could not recall whether he spoke to anyone else, including Sadrac Louis or any kitchen staff, about the complaint. (*Id.* at 125-29.)

Villa testified that Sorenson never told him about a customer complaint. (Villa Dep. at 49, 55-56.) Louis also does not recall this complaint. (Louis Dep. at 47.) And Sorenson has no records of his discussion with Villa, or anyone else, in connection with this complaint, other than his e-mail response to the "customer." (Sorenson Dep. at 126, 129.)

*b.   The Complaint to Sadrac Louis*

Burke complained to Louis around February or March 2018. (Burke Dep. at 93-94.) Burke testified that he told Louis that "[Villa] continuously touched [him]," and that Burke "was getting aggravated because Jose [Villa] would not stop touching [him]." (*Id.* at 93.) Burke claims that Louis laughed in response, then asked whether he wanted Louis to talk to Villa. (*Id.* at 93-94.) Burke declined his offer, explaining that he was "baffled" by Louis's response, and that it made him feel that Villa was "almost

untouchable." (*Id.* at 94, 106.) Louis never followed up with Burke about his complaint. (*Id.* at 94-95.) Nor did Sorenson. (*Id.*)

Louis does not recall Burke ever complaining about his employment. (Louis Dep. at 47, 49.) Sorenson recalls that Louis informed him of Burke's complaint following the missed Father's Day shift, but that Louis "didn't think he was being serious or something to that effect." (Sorenson Dep. at 152.)

### c. The Father's Day Shift and the Complaint to Arthur Sorenson

Most weekends are busy at Bonefish, but Father's Day is one their busiest days of the year. (Defs.' 56.1 ¶¶ 12, 19.) Burke had taken vacation on June 15-16, 2018, to attend a wedding in Maryland, and was scheduled to work Father's Day, Sunday, June 17, 2018. (*Id.*)

Hours before his Father's Day shift, Burke called Louis, explaining that his Greyhound bus back to New York had broken down. (*Id.* ¶ 13.) Sorenson texted him, asking when he would arrive, but Burke never replied (*Id.* ¶ 14.) He missed his shift, leaving the kitchen short-staffed. (*Id.*)[5]

On June 22, 2018, Sorenson met with Burke and told him that he would be removed from the schedule for a week as punishment for the missed shift. (*Id.* ¶ 16.) Burke recalls that Sorenson commended Burke as a capable employee but expressed dismay with Burke's attendance record and disengagement at work. (*Id.*; Burke Dep. at 97-98.) Sorenson told Burke that, unless he improved in these areas, he would be fired. (Defs.' 56.1 ¶ 16.)

---

[5] Defendants later obtained evidence from Greyhound showing that none of its buses broke down on Father's Day and that Burke never possessed a ticket for that day. (*See* Greyhound Aff. (Dkt. 40-12).)

Burke then told Sorenson that Villa was sexually harassing him. (Sorenson Dep. at 148-50; Burke Dep. at 97-98.) Sorenson expressed skepticism about the allegation based on the timing of Burke's complaint; Burke responded that he complained in the past, as a customer and to Louis. (Defs.' 56.1 Reply ¶ 55; Sorenson Dep. at 150-51; Burke Dep. at 97-98.) Sorenson admonished Burke for submitting a "fraudulent" complaint, but then initiated an investigation into his allegations. (Defs.' 56.1 ¶ 27; Defs.' 56.1 Reply ¶ 54.)

Sorenson claims that he "spoke to all of the employees in the back of the house and the managers," asking them three questions: (1) "do they know what sexual harassment is"; (2) "do they know what to do when they hear about sexual harassment in the restaurant"; and (3) "are they aware of any incidents of sexual harassment in the restaurant." (Defs.' 56.1 ¶ 27; Sorenson Dep. at 159-60.) Sorenson also testified that he took handwritten notes for each employee he interviewed. (Sorenson Dep. at 161-62.) Two employees, Donald Edwards and Lars Hinton, told Sorenson that Burke had complained to them about being sexually harassed by Villa. (*Id.* at 162-63.) Donell Ray, a line cook who experienced similar behavior by Villa and whom Burke complained to about Villa, testified that Sorenson never interviewed him. (Ray Dep. at 33)

Sorenson testified that, at the end of the investigation, he found no corroborating evidence to prove that Villa sexually harassed Burke. (Sorenson Dep. at 175.) Because two employees (Edwards and Hinton) said that Burke complained to them about Villa in the past, however, Sorenson testified that he counseled Villa to explain that harassment was not acceptable and to confirm that Villa understood Bonefish's policy. (*Id.* at 175-76.) Sorenson did not record this meeting with Villa (*Id.* at 176.)

Villa testified that he went to speak to Sorenson after other employees told him about their interviews related to Burke's

complaints. (Villa Dep. at 47-48.) Villa claims that Sorenson confirmed Burke's complaint, which Sorenson described as an excuse Burke made for missing work. (*Id.* at 48.) According to Villa, Sorenson asked only whether the complaint was true, and Villa denied it. (*Id.* at 49.) That was the end of the conversation, and Villa "continued with [his] normal day." (*Id.*) Villa testified that he never received a verbal warning and that this incident represented the first time Sorenson had spoken to him about sexual harassment. (*Id.* at 33.)

Sorenson cannot locate any of the notes he claims to have made during his investigation. (Defs.' 56.1 Reply ¶ 58.) And, contrary to his testimony, Sorenson never notified the Joint Venture Partner, Joseph Cruz, about Burke's sexual harassment complaint. (*Id.* ¶ 59; Sorenson Dep. at 173; Dep. of Joseph Cruz (Dkt. 40-7) at 62.)

About three weeks after making this complaint with Sorenson, Burke claims that Villa resumed touching and squeezing his buttocks. (Burke Dep. at 155-57.)

### 3. Burke's Termination

Following the Father's Day shift, Burke called out on Saturday, August 11, 2018 because of food poisoning. (Defs.' 56.1 ¶ 17.) He called out again on Saturday, August 25, 2018 because he was vomiting blood. (*Id.*; Burke Dep. at 164.) And on Sunday, September 16, 2018, Burke called out to attend to a family emergency. (Defs.' 56.1 ¶ 18; Burke Dep. at 166.) Sorenson fired Burke the next day, citing his attendance record. (Defs.' 56.1 ¶ 21.)

Following his termination, Burke filed a complaint on April 22, 2019 in the Supreme Court of New York for Nassau County. (Initial Summons and Compl. (Dkt. 1-1).) Defendants removed the action to this court. (Defs.' Not. of Removal (Dkt. 1).)

## II.  LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A 'material' fact is one capable of influencing the case's outcome under governing substantive law, and a 'genuine' dispute is one as to which the evidence would permit a reasonable juror to find for the party opposing the motion." *Figueroa v. Mazza*, 825 F.3d 89, 98 (2d Cir. 2016) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The movant bears the burden of demonstrating the absence of a question of material fact.

"The role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011). "In determining whether summary judgment is appropriate, this court will construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Id.* But "[a] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," and "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010).

In cases involving claims of employment discrimination, "an extra measure of caution is merited" because "direct evidence of discriminatory intent is rare[,] and such intent often must be inferred from circumstantial evidence found in affidavits and depositions." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006). So too for sexual harassment claims, where state of mind and intent are often at issue. *See Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 61 (2d Cir. 1998). However, "'[t]he

mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient' to defeat a summary judgment motion." *Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012) (quoting *Anderson*, 477 U.S. at 252).

## III. DISCUSSION

The parties dispute whether summary judgment is warranted with respect to Burke's claims of hostile work environment and retaliation under Title VII and the NYSHRL,[6] his claims of assault and battery under New York law, and the application of the after-acquired evidence doctrine.

### A. Hostile Work Environment

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e–2(a)(1). This prohibition "includes requiring people to work in a discriminatorily hostile or abusive environment." *Redd v. New York Div. of Parole*, 678 F.3d 166, 174-75 (2d Cir. 2012).

"To survive summary judgment on [a] hostile work environment claims under Title VII and the NYSHRL, [p]laintiff must demonstrate that a rational trier of fact could find that 'the complained of conduct (1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's sex.'" *Springs v. City of New York*, No. 17-cv-451 (AJN), 2019 WL 1429567, at *10 (S.D.N.Y. Mar.

---

[6] Because the standards for evaluating the Title VII and NYSHRL claims are identical, the court analyzes them together. *See Summa v. Hofstra Univ.*, 708 F.3d 115, 123-25 (2d Cir. 2013).

29, 2019) (quoting *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007)); *see also Redd*, 678 F.3d at 174-75.

> 1.   Severe or pervasive conduct

Defendants do not address the severe or pervasive element. Elsewhere, however, Defendants assert that Villa's conduct could be considered "common horseplay," particularly in the cramped confines of a busy kitchen. (*See* Mot. at 1, 16, 21, 25.) Thus, the court finds it necessary to make plain that Burke has offered evidence to satisfy this element.

To evaluate a hostile work environment claim, the court considers the "totality of the circumstances, . . . including the frequency and severity of the conduct, whether it was physically or verbally threatening, and whether it unreasonably affected the employee's job performance." *Springs*, 2019 WL 1429567, at \*10. "The kinds of workplace conduct that may be actionable under Title VII . . . include unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature." *Redd*, 678 F.3d at 175.

The record leaves little doubt that a rational juror could find Villa's conduct not only severe, but pervasive. Burke alleges that Villa repeatedly touched, grabbed, or pinched his buttocks,[7] *see id.* at 177 ("Direct contact with an intimate body part constitutes one of the most severe forms of sexual harassment."); Villa rubbed his waist, back, shoulders, and arms; and Villa made sexually suggestive comments and advances, including requests that Burke go home with him.

---

[7] Burke finds support for this allegation from Donell Ray, another kitchen employee, who testified that Villa touched his buttocks. (Ray Dep. at 19-21); s*ee Leibovitz v. New York City Transit Auth.*, 252 F.3d 179, 190 (2d Cir. 2001) ("[E]vidence of harassment directed at other co-workers can be relevant to an employee's own claim of hostile work environment discrimination.").

A rational juror could also find that Burke subjectively perceived this environment as hostile. He alleges that Villa continued this conduct, despite many, vocal objections; he complained about Villa's conduct to managers and coworkers; and, disengaged with his job because of Villa's conduct, he began to miss work. Thus, summary judgment is denied on this ground.

2.   Because of sex

The record also shows a triable issue of fact as to whether Villa's conduct was motivated by Burke's sex. As a threshold matter, it is well established that same-sex harassment claims are cognizable under Title VII and the NYSHRL. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79-80 (1998); *Barrows v. Seneca Foods Corp.*, 512 F. App'x. 115, 117 (2d Cir. 2013). "[T]he critical issue for same-sex harassment claims is whether members of one sex are exposed to disadvantageous terms or conditions of employment [*e.g.*, a hostile work environment] to which members of the other sex are not." *Barrows*, 512 F. App'x at 117 (citing *Oncale*, 523 U.S. at 80) (brackets in original). A plaintiff can satisfy this standard by showing that the harasser was motivated by sexual desire, *see Perry v. Slensby*, No. 16-cv-08947 (NSR), 2018 WL 1136922, at *8-10 (S.D.N.Y. Feb. 28, 2018); *Tepperwien v. Entergy Nuclear Operations, Inc.*, 606 F. Supp. 2d 427, 438 (S.D.N.Y. 2009).

The Supreme Court has outlined three ways in which a plaintiff can show that same-sex harassment could constitute discrimination based on sex, including that "the harasser is homosexual (and, therefore, presumably motivated by sexual desire)." *Barrows*, 512 F. App'x at 117 (citing *Oncale*, 523 U.S. at 79-81). But the Court did not provide these examples as "an exhaustive list." *Springs*, 2019 WL 1429567, at *12; *see Barrows*, 512 F. App'x at 117 ("The Court outlined three *examples* of evidence . . . .") (emphasis added). Where credible evidence of the words and actions of a same-sex harasser suggest sexual desire, a rational juror can

find that the harasser's conduct was based on sex, irrespective of whether the plaintiff provides evidence of the harasser's homosexuality. *See Deprey v. FedEx Freight, Inc.*, No. 18-cv-102 (MPS), 2020 WL 1702335, at *4-5 (D. Conn. Apr. 8, 2020) (holding that "a jury could reasonably infer from [the same-sex harassers'] conduct that they were motivated by [plaintiff's] sex" because "factfinders are 'entitled to draw inferences as to intent and motivation from conduct as well as words'") (quoting *Redd*, 678 F.3d at 181)); *Perry*, 2018 WL 1136922, at *9 (finding that "sexual desire may also be shown by other factors such as the nature and content of the conduct itself").

Viewing this record (without tone or expression) in the light most favorable to Burke, a rational juror could find that Villa's conduct was motivated by sexual desire. Burke alleges that Villa frequently touched his buttocks; that he would grab Burke around the waist "like a couple," until he shook him off; that he massaged Burke's back and shoulders in a sexual manner; and that he would ask Burke to come home with him "to have some fun." This conduct is plainly sexual in nature. *See Tepperwien*, 606 F. Supp. 2d at 439 (explaining that, where defendant allegedly "grabbed [p]laintiff's buttocks" and made sexually explicit comments to him, "[a] reasonable jury could find" the conduct "to be more than just mere offensive utterances"). And Defendants' response—that Villa could not have engaged in sexually-motivated conduct toward Burke, because he is in a heterosexual marriage and has children—is without merit.

A plaintiff can also establish that members of one sex are exposed to disadvantageous conditions of employment to which members of the other sex are not, by showing "direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace." *Barrows*, 512 F. App'x at 117 (citing *Oncale*, 523 U.S. at 79-81). Here, the record shows that Villa

allegedly touched or grabbed the buttocks of only male employ-
ees, not female employees. (*See* Defs.' 56.1 Reply ¶ 43.) Thus, a
rational juror could find that "men were exposed to a disadvan-
tageous term or condition of employment to which women were
not." *See Barrows*, 512 F. App'x at 117-18 (finding that a reason-
able jury could find that the supervisor-harasser treated women
better than men because he "directed vulgar comments toward
many of his male coworkers and struck the genitals of numerous
male employees, but female employees . . . were apparently not
subjected to the same treatment"); *see also Deprey*, 2020 WL
1702335, at *5 ("[W]hile there is no direct evidence that the har-
assers treated women more favorably than they treated men,
there is also no evidence that they treated female employees the
same way they treated [plaintiff]—which is enough to warrant
an inference of sex-based harassment.").

Defendants counter by characterizing Villa's conduct as "male-
on-male horseplay" and proffering that Villa targeted Burke be-
cause he could not speak Spanish. (Mot. at 15-16; Reply at 4.)
And a juror may well agree and find Villa's conduct offensive but
neither discriminatory nor motivated by sexual desire. But "the
line between teasing or hazing and sexual harassment is not al-
ways simple to discern," and it is not the court's place "to
supplant the factfinder's role and make such determinations."
*Tepperwien*, 606 F. Supp. 2d at 441; *see also Springs*, 2019 WL
1429567, at *12.

Burke has made allegations that, if believed, a rational juror
could find that Villa's conduct was motivated by sex. Thus, sum-
mary judgment is denied on this ground. *See Redd*, 678 F.3d at
178 (noting that "summary judgment should be used sparingly,"
when considering "fact questions such as state of mind or intent
are at issue"—questions at issue when determining "whether the
plaintiff's sex caused the conduct at issue").

### 3.   Employer liability under Title VII

"The plaintiff must also provide a basis for imputing liability to the defendant employer." *Barrows*, 512 F. App'x at 117. Where, as here, "the harassment is attributable to a coworker, rather than a supervisor, the employer will be held liable only for its own negligence." *Duch v. Jakubek*, 588 F.3d 757, 762 (2d Cir. 2009). The plaintiff must demonstrate (1) that the "employer failed to provide a reasonable avenue for complaint," or (2) "that it knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action." *Id.* "[A]n employer is considered to have notice of sexual harassment if the employer—or any of its agents or supervisory employees—knew or should have known of the conduct." *Distasio*, 157 F.3d at 63-64 (explaining that actual or constructive knowledge is determined by agency principles).

Defendants provided Burke with a reasonable avenue for complaint. The question is whether Defendants knew or reasonably should have known about Villa's conduct yet failed to take appropriate action. Here, both Sorenson's and Louis's knowledge as managers is imputed to the Corporate Defendants. *See Torres v. Pisano*, 116 F.3d 625, 636-37 (2d Cir. 1997). With that in mind, the record establishes several triable issues of material fact, on which, viewed in the light most favorable to Burke, a reasonable jury could find Defendants negligent.

There is a dispute as to whether Sorenson investigated Burke's "customer" complaint in January 2018. Sorenson claims he spoke to Villa, but Villa contradicts this. Given the specificity of that complaint—"Jose" was touching another kitchen employee's "ass, his hips, and his back" and it was not "the first time this has happened"—a rational juror could find that a reasonable manager would have investigated this matter. (*See* Jan. 20, 2018 Customer Complaint.) A rational juror could also find that this

complaint put Sorenson on constructive notice as to Burke's harassment, because the complaint identifies Villa as the alleged harasser, Burke worked the grill station next to Villa, and even a truncated investigation would have revealed Burke as the aggrieved kitchen employee. Finally, that juror could find Sorenson negligent in not responding to this complaint.

There is also a dispute as to whether Burke's complaint to Louis put Defendants on notice. In about February or March 2018, Burke told Louis that "[Villa] continuously touched [him]," and that Burke "was getting aggravated because [Villa] would not stop touching [him]." (Burke Dep. at 93.) Defendants contend this complaint was too vague to put them on notice. But a rational juror could find that Burke's complaint of "continuous[] touching" to the point of aggravation was sufficiently clear. (*See id.*) And that juror could find Defendants, now on notice, negligent, because Louis laughed in response to Burke's complaint and failed to take any further investigative or corrective action.

Finally, a rational juror could find Defendants negligent, because Sorenson failed to take appropriate corrective action in response to Burke's complaint after the missed Father's Day shift. "Whether a company's response was reasonable has to be assessed from the totality of the circumstances," considering "the gravity of the harm being inflicted upon the plaintiff, the nature of the employer's response in light of the employer's resources, and the nature of the work environment." *Duch*, 588 F.3d at 766. Sorenson knew about the "customer" complaint implicating Villa; he confirmed that Burke had made an earlier complaint to Louis; and two employees informed Sorenson that Burke had complained to them about Villa's conduct.

A rational juror could find this evidence sufficient for an employer to correct Villa's conduct. But there is a dispute as to whether Sorenson even counseled Villa about his conduct or Bonefish's non-harassment policy. According to Villa, Sorenson

described the complaint as an excuse Burke made for missing work. Villa claims that he denied the allegation and that was the end of the matter; he "continued with [his] normal day up to [this case]." (Villa Dep. at 49.) Accordingly, viewing the record in a light most favorable to Burke, a rational juror could find Sorenson's response inadequate, particularly where there is a dispute as to whether Villa resumed his conduct only weeks later.

Accordingly, summary judgment is denied as to Burke's hostile work environment claim, and he may pursue it against the Corporate Defendants under Title VII.

### 4. Employer liability under the NYSHRL

The NYSHRL requires that the plaintiff "show that the employer encouraged, condoned, or approved the sexually harassing conduct." *Hoit v. Cap. Dist. Transp. Auth.*, 805 F. App'x 41, 44 (2d Cir. 2020) (citing *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 311 (2004)). "Condonation . . . contemplates a knowing, after-the-fact forgiveness or acceptance of an offense." *Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 88 (E.D.N.Y. 2020). "Alternatively, an employer's calculated inaction in response to discriminatory conduct[] may[,] as readily as affirmative conduct, indicate condonation." *Id.* "It is only after an employer knows or should have known of improper discriminatory conduct that it can undertake or fail to undertake action which may be construed as condoning the improper conduct." *Gorman v. Covidien, LLC*, 146 F. Supp. 3d 509, 521 (S.D.N.Y. 2015).

A rational juror could find that Defendants responded to Burke's complaints with calculated inaction or condonation, for many of the same reasons that a juror could find Defendants negligent under Title VII. Sorenson's possible nonresponse to the anonymous January complaint could constitute calculated inaction. So too could Louis's nonresponse to Burke's direct complaint of "continuous[] touching." (*See* Burke Dep. at 93.) And Sorenson's

decision not to discipline Villa could also be considered condona-
tion. These are genuine questions of material fact for a jury to
answer. Accordingly, summary judgment is denied as to Burke's
hostile work environment claim, and he may pursue it against
the Corporate Defendants under the NYSHRL.

**B. Retaliation**

1. Legal Standard

Title VII forbids an employer from retaliating against an em-
ployee because of the employee's opposition to "any practice
made an unlawful" by Title VII. 42 U.S.C. § 2000e-3(a). "The bur-
den-shifting framework laid out in *McDonnell Douglas*, 411 U.S.
792, 802 (1973), governs retaliation claims." *Summa*, 708 F.3d
at 125. "To make out a *prima facie* case of retaliation, a plaintiff
must make four showings: that (1) she engaged in a protected
activity; (2) her employer was aware of this activity; (3) the em-
ployer took adverse employment action against her; and (4) a
causal connection exists between the alleged adverse action and
the protected activity." *Id.* "Once a *prima facie* case of retaliation
is established, the burden of production shifts to the employer to
demonstrate that a legitimate, nondiscriminatory reason existed
for its action." *Id.* If the employer demonstrates a legitimate, non-
retaliatory reason, then "the employee must, in order to avoid
summary judgment, point to evidence sufficient to permit an in-
ference that the employer's proffered non-retaliatory reason is
pretextual and that retaliation was a substantial reason for the
adverse employment action." *Kaytor v. Elec. Boat Corp.*, 609 F.3d
537, 552-53 (2d Cir. 2010).

2. Application

Burke alleges that Defendants terminated him in retaliation for
making a sexual harassment complaint. Thus, Burke satisfies the
first three prongs of his *prima facie* case. *See Giscombe v. N.Y.C.*

*Dep't of Educ.*, 39 F. Supp. 3d 396, 401 (S.D.N.Y. 2014) (explaining that a protected activity is action that "protests or opposes statutorily prohibited discrimination," including "[i]nformal complaints to supervisors") (citing *Cruz*, 202 F.3d at 566).

"As for causation, a plaintiff must plausibly plead a connection between the act and his engagement in protected activity." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015). "A retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action." *Id.* The Second Circuit has explained that although it "has not drawn a bright line defining . . . the outer limits beyond which a temporal relationship is too attenuated to establish causation," it has "previously held that five months is not too long to find the causal relationship." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010).

Defendants fired Burke within three months of his complaint and failed to make any kind of record as to the circumstances of his termination. In addition, the record indicates that Sorenson, skeptical of Burke's complaint, conducted a *pro forma* investigation—Villa testified that Sorenson described Burke's complaint as an excuse for missing work and Sorenson neglected to interview relevant employees like Donell Ray. Thus, Burke satisfies his burden to show causation and makes his *prima facie* case. *See Hicks*, 593 F.3d at 164 ("The plaintiff's burden in this regard is *de minimis*.").

But Burke's retaliation claim ends there. Defendants provide a legitimate, non-retaliatory reason for Burke's termination, namely, his absenteeism: Burke missed the Father's Day shift under suspicious circumstances, back-to-back weekend shifts in August, and the Sunday shift in September. And Burke fails to meet his burden and show "that retaliation was the determinative factor" in his termination. *See Summa*, 708 F.3d at 129. He offers no direct evidence to prove that a discriminatory motive

caused Defendants to fire him. Nor does he offer any circumstantial evidence showing that Defendants' stated reason was pretext for discriminatory retaliation.

To rebut Defendants' non-retaliatory reason for termination, Burke relies on temporal proximity, Sorenson's alleged hostility to Burke's complaint, and Sorenson's inconsistent testimony about the investigation. But the three-month gap from complaint to termination represents a weak temporal connection in the absence of any aggravating factors relating to Burke's complaint or the circumstances surrounding his complaint. *See El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010) (holding that one month between complaint and discharge "without more . . . is insufficient to satisfy appellant's burden to bring forward some evidence of pretext"). And Burke's reliance on Sorenson's investigation-related testimony does little to bolster this tenuous temporal connection. Sorenson's testimony, though inconsistent as to the investigation, is uncontradicted as to Burke's termination: Defendants fired Burke because he frequently missed work. *Cf. Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013) (holding that "inconsistent and contradictory explanations for the plaintiff's termination, combined with the close temporal proximity between" plaintiff's complaint and termination, were sufficient to create a genuine dispute of material fact).

The court is interested primarily "in what motivated the employer." *Mendez-Nouel v. Gucci Am., Inc.*, 542 F. App'x 12, 14 (2d Cir. 2013) (quoting *McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006)). And the "nondiscriminatory reason for [Burke's] termination [is] abundant." *See id.* When viewing the evidence in the light most favorable to Burke, he proffers a weak issue of fact, based on speculation, about why Sorenson fired him. *See id.* (affirming "summary judgment on the basis that the record contained only a 'weak issue of fact' as to pretext and the

evidence of a legitimate, nondiscriminatory reason for [] termination was abundant") (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000))). "[A] plaintiff must come forward with some evidence of pretext in order to raise a triable issue of fact," and Burke produces insufficient evidence to meet his burden. *See El Sayed*, 627 F.3d at 933. Accordingly, summary judgment is granted as to the retaliation claims under Title VII and the NYSHRL.

### C.   Assault and Battery

Defendants contend that summary judgment should be granted as to Burke's assault and battery claims against Villa, because he fails to identify any incident where Villa put Burke in fear of imminent or harmful contact (assault) or where Villa's conduct amounted to intentional, offensive touching (battery). *See United Nat. Ins. Co. v. Waterfront New York Realty Corp.*, 994 F.2d 105, 108 (2d Cir. 1993). Defendants also argue that Burke fails to identify any specific incident between April 22, 2018 and April 22, 2019, the applicable one-year period set by the date of his complaint. *See* N.Y. C.P.L.R. § 215(3).

The court rejects Defendants claim that Villa's alleged conduct could be described as "innocuous" or that "[e]very employee must accept the occasional touching or contact that arises in the normal workday environment." (Mot. at 39-40.) Nothing about the workday environment described by Burke was "innocuous" or "normal." Villa's alleged conduct—*e.g.*, his frequently grabbing Burke's buttocks or his whipping Burke with a towel—may satisfy the elements of assault and battery under New York law.

The court also rejects Defendants' statute of limitations argument. To oppose employer liability on the hostile work environment claim, Defendants tried to show the effectiveness of Sorenson's remedial response by arguing that Villa's conduct ceased after the June 2018 investigation. This argument implies that Villa's conduct occurred until that point (within the one-year

period) and aligns with Burke's allegations of Villa's constant conduct. In any event, Burke claims that at least one incident occurred after the June 2018 investigation.

Defendants, as the movant on summary judgment, have failed to demonstrate the absence of a question of material fact. Thus, summary judgment is denied, and it will be for a jury to consider whether Burke can prove assault or battery within the applicable limitations period.

### D.   Application of the After-Acquired Evidence Doctrine

Defendants seek summary judgment as to the application of the after-acquired evidence doctrine to limit Burke's potential claim for damages. The after-acquired evidence doctrine limits damages where, after the employee's termination, an employer discovers evidence of an employee's wrongdoing and "establish[es] that the wrongdoing was of such severity that the employee would have been terminated on those grounds alone had the employer had known of it at the time of discharge." *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 362-63 (1995).

Defendants discovered that Burke lied about the missed the Father's Day shift—there was no broken-down Greyhound, there wasn't even a ticket. But Defendants fail to show that Burke's fiction was so severe that Defendants would have fired him on the spot. Defendants recognized Burke as a capable employee, and Sorenson already doubted the veracity of Burke's excuse. And, apart from the Greyhound lie, Burke provided another reason for this missed shift and his general attendance record: He alleged that a co-worker was sexually harassing him. Accordingly, summary judgment is denied as to the application of the after-acquired evidence doctrine.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is DENIED as to Plaintiff Shawn Burke's hostile work environment claim under Title VII and the NYSHRL; his assault and battery claim against Jose Villa; and the application of the after-acquired evidence doctrine. Summary judgment is GRANTED as to all other claims. The parties are DIRECTED to confer with Magistrate Judge Ramon E. Reyes, Jr. to propose a joint pre-trial order.

SO ORDERED.

Dated:     Brooklyn, New York
           November 30, 2021

                                    /s/ Nicholas G. Garaufis
                                    NICHOLAS G. GARAUFIS
                                    United States District Judge